IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES DOUGLAS HAYES,

        Plaintiff,              1:12-cv-1369-PA

                                    **ORDER**

    v.

ERICKSON AIR-CRANE CO., et al.,

        Defendants.

---

**PANNER, District Judge**

    Before the court is defendant's motion for summary judgment
on plaintiff's claim for sex discrimination under Oregon law,
sexual harassment and age discrimination under federal law,
intentional infliction of emotional distress, and negligent
supervision and retention. For the following reasons defendant's
motion for summary judgment is DENIED.

1

**BACKGROUND**

Plaintiff James Hayes (Hayes) began working at defendant Erickson Air-Crane, Inc. (Erickson) in 1993. Hayes Dep. 22:14-16, Feb. 6, 2013. After working for two years, Hayes became "cell leader" of the Preservation Department in Erickson's warehouse. Hayes Dep. 142:10-11. As cell leader, Hayes' direct supervisor was defendant Layne Johnson (Johnson). Hayes Dep. 46:24-25. Nick Smart (Smart) managed the warehouse and was Johnson's supervisor. Hayes Dep. 47:1-2.

Smart referred to Hayes by the nickname "Little Jimi." Smart Dep. 45:11-15, Feb. 5, 2005 [sic]. Other employees heard Smart refer to Hayes as "Little Jimi" and they also began using the nickname for Hayes. Hayes Dep. 112:14-16. Hayes testified that the term "Little Jimi" was used to reference the size of his penis. Hayes Dep. 113:17-22. Smart would "stick his hand up near his face and wiggle his little finger at [Hayes] . . . calling [Hayes] 'Teeny Tiny' as he wiggled it." Hayes Dep. 115:10-14. Hayes testified that "[Smart] said that [I was] Little Jimi, Little Tiny Jimi, and I'm not talking about your height." Hayes Dep. 114:14-19. Hayes felt "humiliated" and "degraded" by the use of the nickname. Hayes Dep. 117:2-3.

Additionally, Smart and Johnson gave Hayes the nickname "Dodgeball." The name was a reference to a movie of the same name in which the main character uses a penis pump to enlarge his

2

genitals. Hayes testified that Smart "said I looked like the character in the movie; that I probably had a sock in my pants, too, or I probably used a pump in my pants . . . it was humiliating to me." Hayes Dep. 77:8, 23-78. Others in the Warehouse began using the nickname "Dodgeball" to refer to Hayes. The nickname was used so often that "it was uncountable." Hayes Dep. 85:14-15.

Smart also referred to Hayes as "Meekerism." Smart Dep. 54:7-10. Smart claimed that he used the term "Meekerism" for Hayes because Hayes was "soft and nonconfrontational [sic]." Smart Dep. 51:2-5. Smart called Hayes "Old Man." Hayes Dep. 239:16-23. Smart and other employees also suggested that Hayes had memory problems. Hayes Dep. 31:6-10.

During the first week of October, 2011, Johnson removed Hayes' work computer and moved Hayes' desk to the crew area where he needed to share it with coworkers. Hayes Dep. 153:20-25. On October 11, 2011, Johnson announced to the Preservation Department, including Hayes, that Hayes was "no longer in charge; you are not to take any directions from him whatsoever." Hayes Dep. 152:22-24. An employee in attendance described the meeting as "highly unprofessional and disrespectful." Jimenez Decl. ¶ 9, May 6, 2013. After the announcement, some employees apologized to Hayes, "saying that they were sorry for the way that ... happened." Hayes Dep. 154:6-9. Hayes understood this announcement

3

to mean he was "delegated as just a subordinate." Hayes Dep.
153:14-19. The following day, Hayes resigned. Hayes Dep. 167:17-
19.

### STANDARDS

The court must grant summary judgment if there is no genuine
issue of material fact and the moving party is entitled to
judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is
"genuine" if a reasonable jury could return a verdict in favor of
the non-moving party. Rivera v. Phillip Morris, Inc., 395 F.3d
1142, 1146 (9th Cir. 2005) (citing Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 248 (1986)). A fact is "material" if it could
affect the outcome of the case. Id. The court reviews evidence
and draws inferences in the light most favorable to the non-
moving party. Miller v. Glenn Miller Prods., Inc., 454 F.3d 975,
988 (9th Cir. 2006) (quoting Hunt v. Comartie, 526 U.S. 541, 552
(1999)). When the moving party has met its burden, the non-moving
party must present "specific facts showing that there is a
genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith
Radio Corp., 475 U.S. 574, 586-87 (quoting Fed. R. Civ. P.
56(e)).

### DISCUSSION

**I.   Federal Sexual Harassment, State Sex Discrimination, and Age
Discrimination in Employment Act Claims**

4

It is unlawful under both federal and Oregon law to discriminate based on sex. <u>See Oncale v. Sundowner Offshore Servs.</u>, 523 U.S. 75, 78 (1998); <u>Fred Meyer v. Bureau of Labor & Inudstries</u>, Or.App. 302, 306-07 (1988). Under both federal and Oregon law, a plaintiff may make a discrimination claim if sex discrimination creates a hostile or abusive work environment. <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 66 (1986); <u>Fred Meyer</u>, Or.App. at 306-07. A plaintiff may show a violation of the Age Discrimination in Employment Act (ADEA) if age-related discrimination has created a "hostile working environment." <u>Williams v. Community Psychiatric Clinic</u>, 33 Fed.Appx 852, 853 (9th Cir. 2002).

To establish a hostile workplace claim based on age or sex, a plaintiff must show (1) that he or she was subjected to verbal or physical conduct of a sexual or age-based nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. <u>Vasquez v. County of Los Angeles</u>, 349 F3d 634, 642 (9th Cir. 2003). Whether conduct was sufficiently severe or pervasive is determined by examining "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is ... humiliating ... and whether it reasonably interferes with an employee's work

5

performance." <u>Clark County School Dist. v. Breeden</u>, 532 U.S. 268, 270-71 (2001) (citation and internal quotation marks omitted).

a. **Discrimination Based on Sex**

Viewed in the light most favorable to Hayes, a reasonable juror could find that Hayes was subject to a hostile work environment due to discrimination based on sex. The terms "Little Jimi" and "Dodgeball" were used in reference to Hayes' penis. Although the term "Little Jimi" is not inherently sexual, Smart used the terms in relation to Hayes' sex. Hayes testified that the conduct was unwelcome. Hayes felt "humiliated" and "degraded" by the nicknames. Hayes Dep. 117:2-3; 77:23-78.

A reasonable juror could find that the discrimination based on sex was sufficiently pervasive to alter the conditions of employment and create an abusive work environment. Johnson testified that Smart used the term "Little Jimi" as long as he could remember. Johnson Dep. 68:5-11, Feb. 5, 2005 [sic]. Regarding frequency, Smart used the nickname "uncountable times." Hayes Dep. 39:1-2. Hayes felt "humiliated" by the term because it was used in the presence of female employees. Hayes Dep. 117:2-3. The fact that Hayes felt humiliated is significant in showing that the discrimination was sufficiently pervasive. <u>Harris v. Forklify Sys.</u>, 510 U.S. 17, 23 (1993). Regarding "Dodgeball," Smart and other employees also used the nickname an "uncountable" amount times. Hayes Dep. 85:14-15.

6

Because a reasonable juror could find that sex discrimination created a hostile work environment, defendant's motion for summary judgment against Hayes' claim under Oregon law for sex discrimination, and Hayes' claim under federal law for sexual harassment is denied.

### b. **Discrimination Based on Age**

Viewed in the light most favorable to Hayes, a reasonable juror could find that Hayes was subject to a hostile work environment due to discrimination based on age. Smart used the phrase "Old Man" to refer to Hayes. Hayes Dep. 239:16-23. Hayes was told "he should find medication that would help" with his memory. Hayes Dep. 31:6-10. An employee described Smart's comments as being "conducted in a demeaning or belittling manner. Jordan Decl. ¶ 6, Feb. 28, 2013. The conduct was unwelcome. Hayes testified that the verbal conduct relating to age "alone would have made me leave." Hayes Dep. 30:21.

A reasonable juror could find that the age discrimination was sufficiently pervasive to create a hostile work environment. The remarks occurred as frequently as the sex-related remarks. Hayes Dep 39:1-2. Under the ADEA, a plaintiff must prove that age was the "but-for" cause of an adverse employment action. Gross v. FBL Fin. Serv. Inc., 557 U.S. 167 (2009). Viewed in the light most favorable to Hayes, a reasonable fact finder could find that age was the "but-for" cause of a hostile work environment due to

age discrimination. A reasonable juror could find that the nickname "meekerism" related to both age and sex. The phrase "old man" and the comments about finding medication specifically reference age. Viewed in the light most favorable to Hayes, a reasonable juror could find that nicknames attacking Hayes' sexual virility, such as "little Jimi" and "Dodgeball" were references to his age, as well as sex.

Because a reasonable juror could find that age discrimination created a hostile work environment, defendant's motion for summary judgment against Hayes' claim for age discrimination is denied.

### c. Tangible Employment Action and Constructive Discharge

An employer may make an affirmative defense to vicarious liability for sexual harassment if the harassment did not result in a tangible employment action, such as a significant change in employment status or an undesirable reassignment. Davis v. Team Elec. Co., 520 F.3d 1080, 1096-97 (2008). Constructive discharge occurs when, "looking at the totality of the circumstances, a 'reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable and discriminatory working conditions." Watson v. Nationwide Ins. Co., 823 F.2d 360, 361 (9th Cir. 1987) (alteration in the original).

An employer may assert an affirmative defense to
constructive discharge by proving "both (1) that it had installed
a readily accessible and effective policy for reporting and
resolving complaints of sexual harassment, and (2) that the
plaintiff unreasonably failed to avail herself of that employer-
provided preventive or remedial apparatus." Pennsylvania State
Police v. Suders, 542 U.S. 129, 134 (2004). The affirmative
defense is not available "if the plaintiff quits in reasonable
response to an employer-sanctioned adverse action officially
changing her employment status or situation, for example, a
humiliating demotion." Id.

Hayes was subjected to age and sex based insults an
"uncountable" amount of times. Hayes Dep. 85:14-15; 39:1-2. A
coworker testified that supervisors insulted Hayes in a
"demeaning or belittling manner." Jordan Decl. ¶ 6. A week before
Hayes resigned, Johnson removed Hayes' computer and moved Hayes'
desk into the crew area, where he needed share it with other
employees. Hayes Dep. 153:20-25. Hayes testified that he felt
"pushed out." Hayes Dep. 153:24-25. A few days later, Johnson
publicly announced that Hayes would no longer retain his
supervisory duties. Hayes Dep. 152:22-24. A coworker described
the announcement as "highly unprofessional and disrespectful."
Jimenez Decl. ¶ 9.

9

Viewed in the light most favorable to Hayes, a reasonable juror could find that a reasonable person in Hayes' position would be forced to quit "because of intolerable and discriminatory working conditions." Watson, 823 F.2d at 361. Additionally, a reasonable juror could find that the public announcement that Hayes would no longer have supervisory duties was "an employer-sanctioned adverse action officially changing [his] employment status or situation." Suders, 542 U.S. at 134. Johnson's "highly unprofessional and disrespectful" dressing down of Hayes, combined with Johnson's removal of Hayes' computer and personal desk could certainly be considered a "humiliating demotion." Id.

### c. **Statute of Limitations**

Defendant's request the portion of Hayes' claims that occurred prior to July 17, 2011 be dismissed as untimely. A plaintiff is required to file a charge within 180 days of each discrete discriminatory act. National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 113 (2002). However, because incidents creating a hostile work environment are "part of one unlawful employment practice," a plaintiff may include acts that occurred outside of the statutory period. Id. at 118-19. Therefore, Hayes may use acts that occurred outside of the statutory period for the purposes of showing a hostile work environment. Hayes may also reference acts outside of the

10

statutory period for his consideration of damages because the incidents that created the hostile work environment were "part of one unlawful employment practice." Id.

II.    **Intentional Infliction of Emotional Distress**

Under Oregon law, in order to prevail on a claim for intentional infliction of emotional distress, a plaintiff must show (1) that the defendant intended to inflict severe emotional distress; (2) that the acts were the cause of the plaintiff's severe emotional distress; and (3) that the acts were sufficiently grievous to constitute a transgression of the bounds of socially tolerable conduct. McGanty v. Staudenraus, 321 Or. 532, 543 (1995). Even if intended to cause distress, "insults, harsh or intimidating words, or rude behavior ordinarily do not result in liability for damages." Lewis v. Oregon Beauty Supply Co., 302 Or. 616, 628 (1987). Rather, IIED claims are typically based on behavior that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of human decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) Torts, § 46, comment d.

Viewed in the light most favorable to Hayes, a reasonable juror could find that the use of nicknames "exceed[ed] the bounds of social toleration." Watte v. Maeyens, 112 Or. App. 234, 239 (1992). "Language used to sexually harass ... [has] been deemed

11

socially intolerable." <u>Whelan v. Albertsons, Inc.</u>, 129 Or. App.
501, 505 (1994). Nicknames such as "Little Jimi" and "Dodgeball,"
were used an "uncountable" amount of times to sexually harass
Hayes. Hayes Dep. 85:14-15. A coworker described the treatment as
"demeaning or belittling." Jordan Decl. ¶ 6. Therefore, a
reasonable juror could find that the conducted exceeded the
bounds of social toleration. Defendant's motion for summary
judgment against Hayes' claim for IIED is denied.

III.   **Negligent Supervision and Retention**

To prevail on a claim for negligent supervision, a
plaintiff must establish that the employer knew or should have
known there was a foreseeable risk that the employee would engage
in discrimination or harassment in the workplace. <u>Willberger v.
Creative Bldg. Maint., Inc.</u>, Civ. No. 06-704-AA, 2009 WL 1773342
(D. Or. June 22, 2009). Although this is a question of fact, "in
an extreme case a court can find that no reasonable fact-finder
could find the risk foreseeable." <u>Donaca v. Curry County</u>, 303 Or.
30, 38-39 (1987).

To prevail on a claim for negligent retention, a plaintiff
must show that the defendant (1) retained an employee who it
either knew to be dangerous or (2) where it could have discovered
the dangerous propensities with a reasonable investigation; and
(3) placed the employee in a position where, because of the
dangerous propensities, the employee posed an unreasonably risk

12

of injury to others. <u>Logan v. West Coast Benson Hotel</u>, 981 F.Supp 1301, 1323 (D. Or. 1997). Viewed in the light most favorable to Hayes, a reasonable juror could find that Erickson could have discovered the dangerous propensities with a reasonable investigation. Supervisors used harassing nicknames towards Hayes an "uncountable" number of times. Hayes Dep. 85:14-15. One employee was aware of conduct that they considered "demeaning or belittling." Jordan Decl. ¶ 6. Another employee described the treatment of Hayes as "highly unprofessional and disrespectful." Jimenez Decl. ¶ 9. Given the descriptions of the conduct as extremely pervasive, a reasonable juror could find that Erickson could have discovered the harassing behavior with a reasonable investigation. Therefore, defendant's motion for summary judgment against Hayes' claims for negligent supervision and retention is denied.

### CONCLUSION

Defendant's motion for summary judgment is DENIED.


IT IS SO ORDERED.


DATED this ___18___ day of June, 2013.

OWEN M. PANNER
U.S. Senior District Judge


13